

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F.#2007R01328

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 22, 2009

**VIA ECF**
The Honorable Frederic Block
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  United States v. Ralph Cioffi and Matthew Tannin
Criminal Docket No. 08-415 (FB)

Dear Judge Block:

The government respectfully submits this letter to request that the Court order a hearing at which Defendant Ralph Cioffi's pretrial release conditions can be reviewed for modification, pursuant to 18 U.S.C. § 3148(a).

I.   Facts

On August 18, 2009, the government moved in limine to seek admission of, among other things, evidence about the defendant Cioffi's attempt to pledge, as collateral for a building loan from Busey Bank in Florida, his investment in the Bear Stearns High Grade Structured Credit Strategies Enhanced Leverage Fund ("Enhanced Fund").  On September 1, 2009, Cioffi's counsel submitted its opposition to the government's motion.

On September 19, 2009, the government obtained evidence that Cioffi himself contacted personnel at Busey Bank to obtain original copies of documents related to the personal loan.  Specifically, on September 8, 2009, Cioffi called a representative of Busey Bank, asking that she locate an original version of a "consent form" related to the personal loan.  Eight days later, on September 16, 2009, Cioffi contacted the same bank employee seeking the same original document and again expressed his interest in obtaining the original "consent" documents, offering to

accompany the bank representative to the bank's storage facility to look for the documents.

At approximately 9:30 a.m. on September 16, 2009, Cioffi informed bank representatives that he would be traveling to Florida and could retrieve the document personally.  Separately, in the evening of September 16, 2009, the government sent a letter to the Court, filed on ECF, informing the Court and the defendant that it would be seeking additional time to further investigate the facts surrounding Cioffi's building loan.

On Thursday, September 17, 2009, the government informed the Court about a subpoena that it had issued to Busey Bank in Florida.  On Friday, September 18, 2009, the day after the status hearing, Cioffi flew to Florida. Before and during his travels, Cioffi personally telephoned a Busey Bank representative numerous times trying to obtain the same "consent form" related to the pledge agreement that was discussed during the previous day's court hearing.[1] Cioffi told a second Busey Bank representative that he wanted to visit Busey's office in Fort Myers to collect the original documents in person.  At that time, bank officials advised Cioffi that they had not yet located the original documents.  Thereafter, Cioffi instructed Busey Bank to send the original documents by Federal Express to his residence in Tenafly, New Jersey.  Significantly, Cioffi did not serve a subpoena for these documents, nor did he attempt to obtain these documents with the aid of his legal team.

Cioffi was aware at the time that he made the September 18, 2009 calls that the documents he was attempting to retrieve were the subject of a pending government trial subpoena.  Indeed, Cioffi's lawyers were advised of the existence of the subpoena in the government's September 16, 2009 letter to the Court:

> [T]he government issued a trial subpoena
> for the discrete set of documents
> related to Cioffi's acquisition of a
> $4,250,000 line of credit in December
> 2006.  We expect that the loan file will
> establish, conclusively, whether Cioffi,

---

[1]     Cioffi left a voicemail message on September 18, 2009 with a Busey Bank employee saying, "I would love to come by and get a fax copy of that document or the document itself."

> in fact, pledged his investment in the
> Enhanced Fund, and whether Tannin
> executed the necessary documents on
> behalf of BSAM.

(Government's September 16, 2009 Letter, p. 3).  Moreover,
government counsel discussed the existence of the subpoena
in detail in Cioffi's presence during the September 17, 2009
status hearing:

> MR. MCGOVERN:  Yes.  We currently have a
> subpoena pending with Busey Bank, which
> is a bank through which Mr. Cioffi was
> seeking a $4.25 million dollar line of
> credit.  They will hopefully comply with
> the subpoena and give[] us all of the
> original documents that will bear out
> what it is that we are saying.  Then we
> will submit to the Court, hopefully
> within the next couple of days, this
> argument laid out with the appropriate
> case law.

(Transcript of September 17, 2009 Status Hearing, p.
28)(emphasis supplied).[2]

Cioffi's attempt to take possession of the
original documents before Busey Bank could turn them over to
the government, pursuant to a valid federal subpoena, is
troubling and could have impeded the government's ability to
obtain the original loan documents.  Such conduct, depending
on the defendant's motive, may be punishable as a felony
under federal law.  See 18 U.S.C. §§ 1503 ("Whoever
corruptly . . . endeavors to influence, obstruct, or
impede[] the due administration of justice, shall be
punished . . .") and 1512(c)("Whoever corruptly (1) alters,
destroys, mutilates, or conceals a record, document, or
other object, or attempts to do so, with the intent to
impair the object's integrity or availability for the use in

---

[2]    Beyond advising Cioffi of the subpoena by letter and
before the Court, the fact that the government had issued a
subpoena for the production of these documents was also reported
in the media.  See, e.g., Chad Bray, *U.S. Seeks To Defer Ruling
On Cioffi Evidence*, Wall St. J., Sept. 18, 2009, at C3 ("[the
government has] issued a subpoena seeking documents related to
the loan.")(emphasis supplied).

an official proceeding; or (2) otherwise obstructs, influences, or impedes any official proceeding or attempts to do so . . .").

The defendant was arrested on the charges in the indictment on June 19, 2008, and released that day on a bond secured by $4,000,000 in assets.  His travel was restricted to the continental United States; his passport was surrendered; and he was to report to pretrial services as directed.  Review of the defendant's conditions of release, in light of this conduct, is appropriate to ensure that his recent conduct on pretrial release merits continued release or a modification of his release conditions (e.g., restricting his contact with potential witnesses or subpoena recipients, 18 U.S.C. § 3142(c)(1)(B)(v), or restricting his travel to New York and New Jersey, 18 U.S.C. § 3142(c)(1)(B)(iv)).

II.  <u>Standard of Review</u>

To merit a reconsideration of a detention determination under the Bail Reform Act, Title 18, United States Code, Section 3142, <u>et</u> <u>seq.</u>, new evidence or changed circumstances relevant to the issues of either dangerousness or risk of flight must be raised.  <u>See</u> <u>United States v. Alonso</u>, 832 F. Supp. 503, 504-505 (D.P.R. 1993)("The reopening of a detention determination may be requested in order for the judicial office to consider additional evidence, provided that (1) the evidence was not previously available and (2) the evidence suggested is relevant to the determination of defendant's risk of flight or danger to the community.")(citing Title 18, United States Code, Section 3142(f))).

In relevant part, Section 3142(f) of the Bail Reform Act, entitled "Detention," reads:

> The hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

4

The facts as described above merit further investigation into whether the defendant may have committed a new federal offense.  Should it be determined that Cioffi's conduct was motivated by a corrupt purpose, something the government continues to investigate, a rebuttable presumption exists in favor of bail revocation. <u>United States v. Mustachio</u>, 254 Fed.Appx. 853, 854 (2d Cir. 2007).  At a minimum, Cioffi's attempts to obtain evidence through extrajudicial means should be confronted and specifically proscribed by the Court.  The government has significant concerns as to whether Cioffi can be trusted to abide by the conditions currently imposed by the Court.

III. <u>Conclusion</u>

Based on the foregoing, the government respectfully requests that Defendant Cioffi be called before the Court to examine his recent conduct and consider modification of his conditions of release pending trial.

Respectfully submitted,

BENTON J. CAMPBELL
UNITED STATES ATTORNEY

By: _____
James G. McGovern
Ilene Jaroslaw
Patrick Sean Sinclair
Brian Sano
Assistant U.S. Attorneys