**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

RALPH CIOFFI and MATTHEW TANNIN,

Defendants.

No. 08 Cr. 0415 (FB)

**ECF**

# MEMORANDUM OF LAW IN SUPPORT OF MATTHEW TANNIN'S MOTION TO SUPPRESS AND TO EXCLUDE FROM EVIDENCE HIS NOVEMBER 2006 PERSONAL DIARY

Matthew Tannin respectfully submits this memorandum of law in support of his motion to suppress all of the evidence that the government has seized from his Gmail account and to preclude the government from introducing into evidence his personal diary, which he maintained on that Gmail account.

## BACKGROUND

Mr. Tannin wrote his November 2006 personal diary entries on his Gmail account. These diary entries reflect, among other things, his thinking concerning his prior and ongoing medical treatment, private family matters and religious issues. In addition to the personal diary, the Gmail account contains intimate and personal communications between Mr. Tannin and his family and friends and potentially privileged communications.

On July 7, 2009, by the government's own admission, it served a search warrant to Google for, without apparent limitation, "the contents of the account" through August 12, 2007. (Oct. 8 Gov't Ltr. at 3.) Initially, in response, the government received a form letter-type communication from Google indicating that the account had been closed. Then, on October 8,

2009, two days after the government interviewed a Google witness, the government produced a CD-ROM received from Google that contained emails from the period November 20, 2006 to August 12, 2007, a ten-month time span. (*Id.*)

On the evening of October 8, 2009, we sent a letter to the government asking for copies of the search warrant and all related materials, and also asking the government to identify what, if any, steps it took to establish a wall between the investigative team and persons conducting the initial review of the personal email account. (A copy is attached as Exhibit A.) Despite the fact that the government was able to provide belated productions of 3500 material and additional government exhibits throughout the weekend, the government has not responded to either of these requests.

Although the government has failed to provide us with the search warrant and other information, both the government's communications on this matter and the documents it has produced indicate that despite the likelihood that the personal email account would contain materials outside the scope of any reasonable search, the government sought and obtained a search warrant for the entire contents of the account. If that is the case, the warrant is invalid on its face because it failed to describe with particularity the materials that would be the proper subject of a search. Such a warrant is unreasonably broad and therefore unconstitutional.

Then, to compound matters, after having seized the entire contents of the account without notice to Mr. Tannin, the government may well have disregarded the U.S. Department of Justice's policies directing that a separate team of prosecutors and investigators be used to review the seized materials in the first instance. Instead of analyzing whether the diary was protected by privilege or otherwise was improperly in its hands, the government immediately published it.

The November 2006 personal diary and all other materials from the Gmail account should be suppressed. In addition, any probative value of the personal diary is substantially outweighed by the unfair prejudice to Mr. Tannin, the waste of trial time, and the confusion of the issues that would result from its introduction. Accordingly, Mr. Tannin's personal diary should be excluded under Federal Rule of Evidence 403.

## ARGUMENT

### I. THE PERSONAL DIARY AND ALL SEIZED MATERIALS SHOULD BE SUPPRESSED BECAUSE THEY WERE OBTAINED THROUGH AN UNREASONABLE SEARCH AND SEIZURE

The Fourth Amendment provides that, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the person or things to be seized." U.S. Const. Amend. IV. An individual has the right to challenge a search and seizure as unreasonable where, as here, he has a subjective expectation of privacy in the area searched, and his subjective expectation is one that society is willing to accept as reasonable. *Smith* v. *Maryland*, 442 U.S. 735, 740 (1979) (citing *Katz* v. *United States*, 389 U.S. 347, 361 (1967)).

There can be no question that Mr. Tannin had a subjective expectation of privacy in the contents of his personal email account. Indeed, the November 2006 personal diary makes clear that Mr. Tannin opened a Gmail account for the specific purpose of having a private place for exploring his personal thoughts and reflections. Google's policies reinforce Mr. Tannin's expectations of privacy. *See* Google policy, *About Gmail: More on Gmail and privacy* (January 2007) ("In personal email communications, there has always been, and always should be, an expectation of privacy between the sender and the intended recipients of a message, enabling

open communication with friends, colleagues, family, and others. . . . **Google does not share or reveal email content or personal information with third parties**.") (emphasis in original).

The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2701-2712, expressly acknowledges the substantial privacy interests that individuals have in the contents of their email, codifying these important privacy rights. The courts have also recognized that individuals have a reasonable expectation of privacy in the contents of their email accounts. *See, e.g.*, *Pure Power Boot Camp* v. *Warrior Fitness Boot Camp*, 587 F. Supp. 2d 548, 560-61 (S.D.N.Y. 2008) (collecting cases); *cf. In re U.S. for Orders (1) Authorizing Use of Pen Registers and Trap and Trace Devices*, 515 F. Supp. 2d 325, 336 (E.D.N.Y. 2007) (finding reasonable expectation of privacy in contents of telephone communications even where voluntarily communicated to third party, such as telephone company).

For a search of such private information to be reasonable under the Fourth Amendment, the warrant must be specific. The Fourth Amendment's particularity requirement is meant to prevent the "general, exploratory rummaging in a person's belongings." *Coolidge* v. *New Hampshire*, 403 U.S. 443, 467 (1971). A warrant is sufficiently particular if it "enable[s] the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States* v. *George*, 975 F.2d 72, 75 (2d Cir. 1992). Evidence obtained in violation of the Fourth Amendment must be excluded from criminal prosecution. *Weeks* v. *United States*, 232 U.S. 383, 398 (1914); *Mapp* v. *Ohio*, 367 U.S. 643 (1961).

Nothing in the government's October 8, 2009 letter indicates that the government limited its search of the account in any way, except by date. Instead, the government sought and seized from Google personal emails for a ten-month period. The majority of the emails have nothing to

do with Mr. Tannin's employment; they include communications with his wife, emails with family photos attached, messages with his mother, private letters to his son, discussions with friends about religion, and potentially privileged communications.

Further, immediately upon receiving the contents of Mr. Tannin's personal email account, the government took "an initial look," identifying and publishing Mr. Tannin's November 2006 personal diary. (Oct. 8 Gov't Ltr. at 1.) Although trial starts tomorrow, the government has ignored our request for information about the search warrant and about whether the initial review was conducted by a separate team as DOJ policy requires. *See Searching and Seizing Computers and Obtaining Elec. Evidence in Computer Investigations*, Dep't of Justice Search and Seizure Manual, at 58-60 (2002) (available at http://www.cybercrime.gov/s&smanual2002.pdf) (providing that when a search may result in the seizure of privileged files, government "should devise a post-seizure strategy for screening out the privileged files and should describe that strategy in the affidavit"). *See also Andresen* v. *Maryland*, 427 U.S. 463, 482 n.11 (1976) (noting that the government must "take care to assure that [searches] are conducted in a manner that minimizes unwarranted intrusions upon privacy").

A narrow search warrant and implementation of safeguards for review were particularly critical here because, by government design, Mr. Tannin had no notice of the government's search and seizure and thus no opportunity to challenge it before the contents were seized and reviewed. The government could have chosen to request disclosure of the contents of Mr. Tannin's account by way of trial subpoena, but then it would have had to provide notice to Mr. Tannin. *See* 18 U.S.C. § 2703(b)(1)(B)(i) (requiring notice to customer if government uses trial subpoena to seek disclosure). Instead, it served an overly broad search warrant without notice.

The search and seizure of Mr. Tannin's entire personal email account was an unconstitutional intrusion into Mr. Tannin's personal papers. The personal diary and other fruits of the improper search and seizure, if any, should be suppressed.

## II. THE PERSONAL DIARY SHOULD BE EXCLUDED UNDER RULE 403 BECAUSE IT WOULD CONFUSE THE ISSUES, WASTE TIME AND UNFAIRLY PREJUDICE MR. TANNIN

Mr. Tannin's personal diary should also be excluded under Federal Rule 403 because any probative value is substantially outweighed by the trial time it would consume, the confusion of issues it would create, and the unfair prejudice to Mr. Tannin.

The government's charges pertain to a specified and limited period: "[i]n or about and between March 2007 and June 2007." Indictment ¶¶ 58, 61, 63, 67. The November 2006 personal diary, by contrast, addresses events that took place as far back as November 2005. Its contents fall well outside the period in the indictment.

To expand – on the eve of trial – the focus of this lengthy and complex trial from a four-month period in 2007 to a far broader period between 2005 and 2007, would not be fair or orderly. This case is document-heavy and fact-intensive and is already expected to last six weeks. The government intends to call more than 30 witnesses and seeks to introduce hundreds of exhibits. There will also be a substantial defense case. Were the government permitted to introduce the contents of the personal diary, it would greatly expand the scope of the issues, and Mr. Tannin would be forced to defend. It would require his defense to go back a year and half before the Funds closed, to trace the Funds' development over time, and to explain in some detail the evolution of Mr. Tannin's own thoughts, understandings, and emotions on a real-time basis throughout 2006 and into 2007. Multiple additional witnesses would need to be called, and multiple additional exhibits would have to be introduced. Such evidence would have little probative value to the case charged in the indictment, but its introduction would confuse the

issues and unnecessarily prolong the trial. The diary references Mr. Tannin's worries regarding certain issues relating to the Barclays leverage facility. This issue, the subject of a civil lawsuit that has now been settled, has no place in this criminal case. Likewise, the personal diary mentions Mr. Tannin's stress about the principal trade letters issue, something he refers to as "the whole regulatory thing." As this Court has already indicated, the principal trade letters issue is collateral to the charges in the case.

Finally, the introduction of the November 2006 personal diary would unfairly prejudice Mr. Tannin. Woven throughout the diary are references to Mr. Tannin's thinking about his prior and ongoing course of medical treatment, personal family matters, and religion. Mr. Tannin's diary entries about his own medical treatment should be private and not fodder at trial. Moreover, the Federal Rules of Evidence clearly recognize the prejudicial nature of evidence regarding religion and religious beliefs. Rule 610 prohibits the admission of "[e]vidence of the beliefs or opinions of a witness on matters of religion . . . for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced." Such evidence is excluded because of its "possible prejudicial effect . . . on the jury." *United States* v. *Kalaydjian,* 784 F.2d 53, 56 (2d Cir. 1986) (upholding decision prohibiting defendant from cross-examining government witnesses regarding their reasons for affirming rather than swearing on the Koran). Indeed, the District of Columbia Circuit has stated that "[t]he purpose of the rule [610] is to guard against the prejudice which may result from disclosure of a witness's faith." *United States* v. *Sampol,* 636 F.2d 621, 666 (D.C. Cir. 1980). *See also Contemporary Mission, Inc.* v. *Bonded Mailings, Inc.,* 671 F.2d 81, 84 (2d Cir. 1982) (inquiry into genuineness of witness's church affiliation properly excluded by trial court because of potential prejudicial

effect). Mr. Tannin's religion reference is not only unfairly prejudicial, but also may distract and unfairly prejudice.

Mr. Tannin's personal diary should be excluded under Federal Rule 403 as unfairly prejudicial, a waste of time, and confusing and misleading to the jury.

**CONCLUSION**

For the reasons stated above, the contents of Mr. Tannin's Gmail account should be suppressed and the government should be precluded from introducing the November 2006 personal diary into evidence.

Dated: New York, New York
October 12, 2009

Respectfully submitted,

**BRUNE & RICHARD LLP**

By: /s/ Susan E. Brune

Susan E. Brune
Nina M. Beattie
MaryAnn Sung
80 Broad Street
New York, New York 10004
(212) 668-1900
sbrune@bruneandrichard.com
nbeattie@bruneandrichard.com
msung@bruneandrichard.com

*Attorneys for Defendant Matthew Tannin*